1  Carol Lynne Arao
   P.O. Box 1621
2  Capitola, CA 95010

3  Telephone:    (831) 464-1105

4  In Pro Se

*ADR*

2008 JUN 23  A 11: 51
RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

*FILED*

*C/ PVT*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

CAROL LYNNE ARAO,

      Plaintiff,

     v.

CABRILLO COMMUNITY COLLEGE, PEGI
ARD, DEBRA BARNETT, LOREE
McCAWLEY, BARBARA SHINGAI,
SHELLEY WEST, and DOES 1 through 100

      Defendants.

Case No. **C08  03050 PVT**

**COMPLAINT FOR DAMAGES**
(Violation of Federal and State Civil
Rights Statutes; Punitive Damages &
Attorney's Fees Requested)

**JURY TRIAL DEMANDED**

Plaintiff CAROL LYNNE ARAO alleges:

## I. PARTIES AND CAPACITIES

1.    At all relevant times, plaintiff CAROL LYNNE ARAO was a citizen and resident of the State of California and the County of Santa Cruz and employed by CABRILLO COMMUNITY COLLEGE.

2.      At all relevant times, defendant CABRILLO COMMUNITY COLLEGE was a public entity, a public California community college, with its principal place of business at 6500 Soquel Drive, Aptos, California, 95003 organized and existing under and by virtue of the laws of the State of California. CABRILLO COMMUNITY COLLEGE employs over 500 full time staff and has an enrollment in excess of 15,000 students. Under California Government Code § 815.2 (a), defendant CABRILLO COMMUNITY COLLEGE is liable for any and all wrongful hereinafter complained of committed by any of the individual defendants.

3.      At all times relevant, defendant PEGI ARD was employed by CABRILLO COMMUNITY COLLEGE as a Vice President of Business Services. Under California Government Code § 820 (a) individual employees are liable for injury caused by his act or omission to the same extent as a private person.

4.      At all times relevant, defendant DEBRA BARNETT was employed by CABRILLO COMMUNITY COLLEGE as an Academic Personnel Technician. Under California Government Code § 820 (a) individual employees are liable for injury caused by his act or omission to the same extent as a private person.

5.      At all times relevant, defendant LOREE McCAWLEY was employed by CABRILLO COMMUNITY COLLEGE as a Human Resources Director. Under California Government Code § 820 (a) individual employees are liable for injury caused by his act or omission to the same extent as a private person.

6.      At all times relevant, defendant BARBARA SHINGAI was employed by CABRILLO COMMUNITY COLLEGE as an Assistant Director of Human Resources. Under California Government Code § 820 (a) individual employees are liable for injury caused by his act or omission to the same extent as a private person.

7.      At all times relevant, defendant SHELLEY WEST was employed by CABRILLO COMMUNITY COLLEGE as an Accountant. Under California Government Code § 820 (a)

1   individual employees are liable for injury caused by his act or omission to the same extent as a

2   private person.

3       8.      Plaintiff is informed and believes and thereon alleges that each of the defendants

4   designated as a DOE defendant is intentionally and negligently responsible in some manner for

5   the wrongful acts and omissions and the events herein referred to, and thereby proximately

6   caused injuries and damages as herein alleged. The true names and capacities of Does 1 through

7   100 inclusive, and each of them, are not known to plaintiff, who therefore sues said defendants

8   by such fictitious names. Plaintiff will amend this complaint to show their true names and

9   capacities when the same have been ascertained. Under California Government Code § 820 (a)

10  individual employees are liable for injury caused by his act or omission to the same extent as a

11  private person. Under California Government Code § 821.4 a public employee is liable for injury

12  caused by his failure to make an inspection, or by reason of making an inadequate inspection of

13  the property of the public entity employing the public employee, for the purpose of determining

14  whether the property complies with or violates any enactment or contains or constitutes a hazard

15  to health and safety.

16              **II. JURISDICTION AND VENUE**

17      9.      This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for

18  employment discrimination.

19      10.     The jurisdiction of this Court over the subject matter of this action is predicated

20  on 28 U.S.C. § 1331; 29 U.S.C. 626(C); 42 U.S.C. § 2000e-5(g); 42 U.S.C. §§ 1983, 1988,

21  12117(a).

22      11.     Plaintiff filed charges with the Federal Equal Opportunity Commission regarding

23  defendant's alleged discriminatory conduct on or about March 22, 2007

24

25

26

12.     The Equal Employment Opportunity Commission issued a Dismissal and Notice of Rights, Right to Sue Letter (copy attached), which was received by me on or about March 28, 2008.

13.     Venue is proper in the San Jose Division of this District because Plaintiff's claims arose in this Division of this District and because, on information and belief, all defendants are and were at all times mentioned herein residents of the State of California and/or of the San Jose Division of the Northern District of California.

### III. BACKGROUND FACTS

14.     Plaintiff's federal claims arise under the First, Fifth and Fourteenth Amendments to the United States Constitution; Title VII of the federal Civil Rights Act; Title 42 of the United States Code, §§ 1981, 1983, 1985(3), 2000e-2(a), and 2000e-3(a).

15.     Plaintiff CAROL LYNNE ARAO is a female of Japanese-American descent. At all relevant times, Plaintiff was over the age of 40.

16.     Defendant PEGI ARD is a Caucasian female.

17.     Defendant DEBRA BARNETT is a Caucasian female.

18.     Defendant LOREE McCAWLEY is a Caucasian female.

19.     Defendant BARBARA SHINGAI is a female of Japanese-American descent.

20.     Defendant SHELLEY WEST is a Caucasian female.

21.     KARI KUBIK is a Caucasion female employed by CABRILLO COMMUNITY COLLEGE as a Confidential Human Resources Assistant.

22.     On or about May, 2006, ARAO applied for a temporary out-of-class assignment as a Confidential Personnel Technician. ARAO was 56 years old at the time.

23.     On or about July 2006 through October 2007, KUBIK was assigned the temporary out-of-class assignment of Confidential Personnel Technician which ARAO for which ARAO had applied. KUBIK was 39 years old at the time. At that time, Confidential

1  Personnel Technicians received higher pay than Confidential Assistants. ARAO had greater

2  seniority and training for the position. KUBIK had to be trained first to do ARAO's duties, then

3  given the specialized training and duties of the Confidential Personnel Technician.

4       24.    On or about June 6, 2006, SHINGAI prepared an annual evaluation of ARAO.

5  The "Recommendation for continued employment?" was marked "Yes" The choices were,

6  "Yes," "No," or "With Reservations."

7       25.    On or about July 10, 2006, ARAO replied to the annual evaluation, noting that

8  SHINGAI did not permit her to read the evaluation before signing, and failed to give her 10

9  working days to respond to the evaluation. ARAO pointed out that she had requested regular

10  meetings with SHINGAI through the course of the 2005-06 academic year, but that SHINGAI

11  did not meet with her on a regular basis until Spring of 2006. ARAO noted that SHINGAI

12  "seemed to shut me out by not giving me the information and tools needed to do my job;" that

13  work ARAO could have done was being assigned to hourly employees. She reported that

14  BARNETT "continues to be discourteous to me," that she "slammed a door in my face." ARAO

15  stated that BARNETT "often refused to work cooperatively with me.... In early November,

16  2005 [she] had turned the heat thermostat to the off position." ARAO wrote "One worker told

17  me that 'They' did not like me complaining about how cold the office was. I was freezing.

18  Barbara [Shingai] seemed to turn a deaf ear to my complaints and failed to intervene when I

19  reported these incidents to her."

20       26.    On or about July 12, 2006, at about 8:00 a.m., ARAO had a phone conversation

21  with SHINGAI wherein ARAO expressed her concern about her future employment with

22  CABRILLO COMMUNITY COLLEGE. Her workload had been downsized over the past year,

23  and SHINGAI gave her notice that much of her work would be taken over by another

24  department. ARAO requested to be transferred to the Business Office.

25

26

27.     On or about July 12, 2006, after the phone conversation with SHINGAI, ARAO was told to meet with SHINGAI, McCAWLEY, and ARD. The meeting was hostile, with ARD shouting at ARAO in a room that was enclosed by a glass wall and visible to other Human Resources Department employees and visitors to the office. ARAO was reprimanded for asking SHINGAI about ARAO's position and why she was training SHINGAI and others to do ARAO's job.

28.     On or about July 13, 2006, SHINGAI wrote a memorandum to McCAWLEY and ARD, giving SHINGAI's interpretation of the July 12 phone conversation with ARAO.

29.     On or about July 18, 2006, ARAO was asked by SHINGAI to make copies of instructor evaluations and was told that the Program Chairperson along with a third party would be reviewing the instructor evaluations. ARAO questioned doing the assignment as requested out of concerns that she would be out of compliance due to the rights of privacy accorded by the Federal Privacy Act, the California Education Code, and the instructors' contract with Cabrillo College Federation of Teachers and CABRILLO COMMUNITY COLLEGE District. SHINGAI became angry at ARAO for raising those objections.

30.     On or about July 18, 2006, ARAO sent an email to McCAWLEY, copied to SHINGAI and ARD, which stated:

Re: Instructor Evaluations and Access to Evaluations By Third Parties

I have been asked by my supervisor, Barbara Shingai, to make copies of instructor evaluations for Charlotte Jensen, Program Chairperson, Medical Assistant Program who I have been told is in the process of some type of program review. I have done what I was asked to do and provided said copies of instructor evaluations to Barbara. However, I am concerned about the privacy of personnel records and who will view them. Can you assure me that I am not violating the

Federal privacy rights of these employees and that I am not violating any provisions of the California Education Code relative to California Community College personnel records. Who will be looking at these evaluations? Is a release from the instructor needed? I don't recall having to provide copies of instructor evaluations for other programs (i.e., Dental Hygiene, Nursing, Radiologic Technology).

Note: Article 19.1 of the contract between Cabrillo Community College District and Cabrillo College Federation of Teachers, Local No. 4400 dates July 1, 2004 through June 30, 2007 states:

"Personnel records will be kept for each bargaining unit member in compliance with the California Education Code. Such records shall pertain directly to the employment relationship between the unit member and the District. Each personnel record shall be identified by the unit member's name and Social Security number. The personnel file of each unit member shall be maintained at the District's Personnel Office in compliance with the California Education Code."

Article 19.4 of the contract between Cabrillo Community College District and Cabrillo College Federation of Teachers, Local No. 4400 dates July 1, 2004 through June 30, 2007 provides:

"All personnel files shall be kept in confidence and shall be available for inspection only by the appropriate administrator of the District. The District shall

keep a log indicating the persons who have examined a personnel file as well as the date such examinations were made. Such log and the unit members' personnel file as well as the date such examinations were made. Such log and the unit member's personnel file shall be available for examination by the unit member, or his/her CCFT representative if authorized by the unit member. The log shall be maintained in the unit member's personnel file. The custodians of the personnel files engaged in routine filing of documents, shall not be required to enter their names on such logs."

Section 19.6 provides:

"The District will only release information to creditors or other person upon proper identification of the inquirer and acceptable reasons for the inquiry. Information then given from personnel files shall be limited to verification of employment, length of employment and verification and disclosure of salary range information. Release of more specific information may be authorized in writing by the unit member."

31.    On or about July 19, 2006, ARAO received a "Written Reprimand and Notice of Possible Further Disciplinary Action" prepared by ARD and McCAWLEY. The Reprimand was dated July 18, 2006.

32.    On or about August 1, 2006, ARAO submitted a "Reply to Pegi Ard's & Barbara Shingai's Memorandums." In her reply, ARAO states "many younger women have been hired as temporary hourly workers to do the work I should have been assigned. ... For the most part, I was excluded in being given work to do as part of the Payroll Conversion Project as these younger hourly workers were given work that should have been given to me as I was available to

do the work. ... My workload has been downsized over the past year, with my supervisor, Barbara Shingai giving me notice that much of my work will be or may be taken over by another department. ... In the past year, I have been subjected to unrelenting emotional abuse and harassment which has taken a toll on my health and physical well being." ARAO mentioned having had breast cancer and surgeries in 1990, and again in August and December of 2005. ARAO wrote, "When I returned from my surgery, I found that little work was coming my way and that the working relationship that I had with my co-workers and my supervisor had changed significantly. ... [BARNETT] did not want me to move to Room 909-M as she did not want to share the office space with me. I strongly suspect that Debra Barnett's complaints about me are racially motivated. ... In summary, due to the unrelenting harassment and abuse that I have suffered under Barbara Shingai and the Human Resources Department of Cabrillo College, I am requesting an immediate transfer to another department."

33.    On or about August 2, 2006, ARAO filed a Workers' Compensation claim for job-related "injury to psyche and nervous system due to continuous trauma" from "8-2-2005 continuous trauma to present."

34.    On or about October 26, 2006 ARAO was assigned to work in a trailer in isolation from all other employees of CABRILLO COMMUNITY COLLEGE.

35.    On or about October 30, 2006, ARAO was released to return to work without restrictions.

36.    On or about October 30, 2006, ARAO sent an email to Cheryl Henrickson with copies to McCAWLEY, SHINGAI and Doug Deaver describing: an ant infestation in the trailer, mold on the window glass, and wet and moldy boxes. She asked, "Why wasn't the office cleaned and inspected prior to my arrival?" In addition, she noted a fire hazard in that dry grass was growing up against the trailer.

37.     On or about November 1, 2006, Jose Velasquez, Custodial Supervisor, told me that mold spores were coming out of the ac/heating unit and that I should leave my office door open. ARAO e-mailed Louise Hill of the U.S. Environmental Protection Agency about mold.

38.     On or about November 2, 2006 rain water leaked into the trailer which was ARAO's worksite. ARAO verbally notified the Facilities Director about the water intrusion.

39.     On or about November 2, 2006, received information from USEPA regarding mold and remediation measures.

40.     On or about November 3, 2006, ARAO called the Santa Cruz County Environmental Health Department. She was told that mold can be very dangerous and that she should call Cal OSHA.  ARAO filed a complaint (205861750) with the California Division of Occupational Safety and Health.

41.     The following Monday, November 6, 2006, ARAO was placed on indefinite paid administrative leave by McCAWLEY. The memorandum was copied to ARD and SHINGAI. The memo stated, "This action is an effort to respond to your expressed concerns regarding your new worksite and will provide the District an opportunity to address your concerns and/or find another more suitable work site where you can be located."

42.     On or about November 17, 2006, CABRILLO COMMUNITY COLLEGE leased a mobile office, intended for ARAO.

43.     On or about November 28, 2006, ARAO spoke to Bobbie Lax, Maintenance Tech (Carpenter) and asked him if the bad trailer had been fixed and/or repaired and was told that nothing has been done to the trailer. Mr. Lax did mention that Grant Lemon had been given over-time to ready a trailer for my occupancy.  Mr. Lemon installed the electrical circuits for a telephone and computer inside.  Mr. Lemon called the I.T. desk to see when the computer and phone would be installed and was told in a day or two.  He asked to be contacted if the computer

and telephone techs ran into any problems. Mr. Lemon told ARAO that the trailer was located "in the South Forty" behind the Football Stadium.

44.     On or about January 31, 2007, ARAO received, via her attorney, a faxed letter from CABRILLO COMMUNITY COLLEGE stating "this is to inform you that your client is directed to return to work on February 12, 2007. Please inform your client of this direction."

45.     On or about February 9, 2007, CABRILLO COMMUNITY COLLEGE was notified that ARAO suffered from gastrointestinal dysmotility disorder via a letter from Gordon Lee, M.D. faxed to Susan Torres, Human Resources Benefits Analyst.

46.     On or about February 12, 2007, ARAO reported to work and was told by McCAWLEY that her work site was not ready. As ARAO turned to leave, Ms. McCawley called her back and proceeded to yell at ARAO for her poor communications, and that she must have problems communicating with her attorney. Later that day, ARAO called Bill Wrankle, Lead Maintenance Technician and asked him if the work site was ready. Mr. Wrankle told ARAO that the work site, the trailer, was ready.

47.     On or about March 7, 2007, ARAO filed a complaint with the California Department of Fair Employment and Housing alleging employment discrimination and retaliation.

48.     On or about March 9. 2007, ARAO received a notice of findings from Cal OSHA. Evidence of water intrusion was found in the trailer in which ARAO had been assigned to work. CABRILLO COMMUNITY COLLEGE was cited and fined $150.00.

49.     On or about May 2, 2007, ARAO filed a California Division of Labor Standards Enforcement Safety Retaliation complaint. She was still on indefinite paid administrative leave.

50.     On or about May 25, 2007, ARAO was, for the first time, given a June 16, 2005 investigation report relating to her 2005 charges of discrimination. This report was introduced into evidence by CABRILLO COMMUNITY COLLEGE DISTRICT in EECO case number

37a-2007-05140. The College Confidential Employee Handbook (updated: October 2006) states, in relevant part:

Section III, 1 (a):

> Personnel Files: The official personnel file of each employee shall be maintained at the District's Human Resources Office and shall be considered confidential as prescribed by law. Any employee files kept by any supervisor shall not contain any material that is not in the main personnel file. No adverse action of any kind shall be taken against any employee based upon materials that are not in the official personnel file.

Section IV 1 (c):

> Due Process: Confidential-designated employees shall be afforded due process in accordance with the law during a procedure related to employment and/or working conditions.

51.    On or about June 1, 2007, CABRILLO COMMUNITY COLLEGE sent ARAO a letter stating, "The District has received notification that you have been released to return to work. This is to advise you that your last day of paid administrative leave will be Monday, June 4, 2007. According to District records, you have nineteen (19) non-work days remaining on the books for the 2006-2007 year. As it has been your usual pattern to take your non-work days off in the month of June, these hours/days will be scheduled as follows: Tuesday, 6/5 through Friday, 6/29: 19 days of non-work time.  You will be expected to return to work on Monday, July 2, 2007. ... Please report to the modular unit (between the Campus Sheriff's Office-bldg. 955 and adjacent classrooms – Bldg. 850). The letter was signed by McCAWLEY and copied to ARD.  The letter was dated 8 months after ARAO had been released to return to work.

52.    On or about June 27, 2007, McCAWLEY sent another letter to ARAO confirming her return to work in the modular unit, and informing her that she would be working in support

of the District's continued Payroll project and placing her under the supervision of WEST. McCAWLEY wrote that there would be other Business Services personnel assigned to share the modular work space "as Business Services projects necessitate."

53.    On or about July 2, 2007, ARAO reported to the office trailer located behind the Football Stadium. Her new work supervisor, WEST, told her that a temp hourly worker, Cathy Vance, would also be sharing the trailer. ARAO was told that she could not bring in a refrigerator without an inspection and clearance from the Maintenance and Operations Department. Later that day, ARAO met Cathy Vance who told ARAO that VANCE was set up to work at home and that she did not come to campus very often. After the end of August, Ms. Vance stopped coming to the trailer and had only worked a few hours in total in the trailer. The trailer did not have available drinking water, and the nearest restroom facility was in the football stadium, a walk of nearly 80 yards from the trailer.

54.    On or about July 3, 2007, ARAO emailed Nugent, with a cc to Bill Wrankle, WEST and Greg Lansdowne asking for permission to bring in her small refrigerator and a small microwave oven to the trailer. She stated she was told by WEST that she could not have those items until the office had been inspected (electrical) and she had the approval in writing. ARAO wrote, "JUSTIFICATION" The "mobile office trailer" gets very warm on warm days. If I use the a/c for a prolonged period of time I get very dehydrated. *I am in need of fresh, cool water to drink to prevent heat exhaustion.* When I left the office on Monday, July 2, 2007, the inside air temperature was at 90 degrees (there is no higher temp reading as that is the highest temperature on the scale). By the way, where is the closest fresh water drinking fountain to my location?"

55.    On or about July 5, 2007, ARAO emailed WEST informing her that the ladies restroom had no toilet paper, paper towels, etc. She had tried to contact Maintanence and Operations to no avail.

56.    On or about July 20, 2007, ARAO submitted a "Work Order Request Detail" asking for an additional electrical circuit. She wrote, in relevant part:

> Original request sent via e-mail on July 3, 2007, with a response from Joe Nugent on July 12, 2007 that the work requests had been assigned and were being addressed. ... I am asking for a circuit so that I can bring in a small refrigerator in order to keep my drinking water cool and fresh. My arm is hurting from having to bring in a medium sized ice chest in the Trailer every day so that I can have cool fluids to drink. ... There have been some days that I have experienced dizziness from the heat and headaches from using the air conditioning for prolonged periods of time – both the air conditioning and the heat without using the air conditioning is extremely dehydrating." ARAO noted several other offices and buildings have refrigerators for employees to use, but they are too far away to be of any use to her. She concluded with "An electrician inspected the Trailer and said it would not be a problem to put in a circuit and that he would take care of it upon his return from vacation."

57.    On or about July 23, 2007, ARAO emailed Nugent, with a cc to WEST, Wrankle and Lansdowne, regarding her request to bring a refrigerator, as well as other concerns. She wrote, in relevant part: "I would like to be able to bring in a small refrigerator for the following two reasons: a) to keep drinking water cool as the Trailer gets very warm. ... b) to be able to keep my gel pacs for my hands/wrists frozen and cold. I have a documented Workers' Comp injury to my hands/wrists due to repetitive stress from 1992 and have had four surgeries as a result of this Cabrillo College work-related injury to my hands. I use the gel pacs when my hands/wrists ache. I was able to keep my gel pacs in the freezer compartment of the refrigerator when I was at other campus work sites." ARAO also asked where were the nearest fire alarm and fire extinguishers.

58.     On or about July 25, 2007, ARAO received a telephone call from Grant Lemon, Maintenance Technician, informing her that he had been assigned the request to install the electrical circuit for a refrigerator, but that he would be on vacation for the next two weeks, and he would not be able to complete the work requested until after his return. Lemon suggested ARAO go ahead and bring her refrigerator in. Later that day, Nugent stopped by ARAO's trailer and told her he preferred she not bring in a refrigerator to use until the circuit was installed. Nugent said he would have a different worker install the circuit as it would be too long before Grant returned from his vacation.

59.     On or about July 31, 2007, ARAO emailed Joe Nugent, Director of Maintenance and Operations, with a copy to WEST, advising him that the ladies restroom had not been cleaned for several days. On or about that same day, ARAO finally received permission from Bill Wrankle, Supervising Maintenance and Operations Technician, to bring in her refrigerator.

60.     On or about August 6, 2007, ARAO emailed Nugent again, advising him the ladies restroom was in desperate need of cleaning and restocking. She copied WEST and Greg Lansdowne on the email.

61.     On or about August 7, 2007, ARAO emailed WEST advising her that the restroom doors were locked.

62.     On or about August 15, 2007, CABRILLO COMMUNITY COLLEGE contracted with Crystal Springs to provide drinking water to the "new trailer below the football field, between sheriffs ofc & Bldg. 850." ARAO worked in a trailer for 37 days in the middle of the summer before CABRILLO COMMUNITY COLLEGE began to provide fresh and pure drinking water.

63.     On or about September 24, 2007 ARAO emailed WEST, with a cc to Rebecca Valdivia, informing her that she needed to drive to another building to use a restroom as the Football Stadium Ladies Restroom is undergoing repair.

64.    On or about October 8, 2007, at about 10:00 a.m., ARAO emailed Nugent, with a cc to WEST, Jose Velasquez, Debbie Pozzi, and Katelyn Rogers, informing him that her key to the Football Field Ladies Restroom Supply Closet no longer worked and that the restroom was in need of supplies. At about 3:30 p.m., she sent a second email stating she had not received a response from Maintenance and Operations on her earlier email.

65.    On or about October 18, 2007, WEST informed ARAO that the office trailer to which she was assigned would be moved from behind the Football Stadium to a location across Cabrillo College Drive next to the construction zone for the Performing Arts and Theatre complex.

66.    On or about October 19, 2007, ARAO emailed WEST, with a cc to Victoria Lewis, Nugent, and Deaver regarding the proposed moving of the trailer to near a construction zone. ARAO wrote, in relevant part, "As the Trailer is set to be moved on Wednesday, October 24, 2007, please note that I do not wish to be moved to that particular location at this time due to the major construction that will be taking place in such close proximity to where the Trailer is to be moved. I kindly request that the College reconsider this particular location. ... Surely, a safer location can be found."

67.    On or about October 22, 2007, Dr. Arthur Anton, Ph.D., a California Licensed Psychologist wrote, "It has come to my attention that Carol Arao is about to be relocated to an office that will be very near a site on the Cabrillo Campus at which construction is taking place. Ms. Arao still suffers from anxiety, and it is my opinion, in my capacity as her treating psychologist, that the loud sounds to which she will be subjected will be injurious to her mental health. It is recommended, therefore, that she not be relocated until construction has been completed." This letter was attached to a letter from The Law Offices of Russell D. Jacobson to CABRILLO COMMUNITY COLLEGE protesting the proposed move of the Trailer.

68.    On or about October 23, 2007, Dr. Triadafilopoulos, M.D. wrote:

I would like to take the opportunity in this note to confirm that your client, Carol Arao, suffers from anxiety disorder that is directly linked to external and environmental stresses, particularly at the work site. The anxiety is also linked to the development of several gastrointestinal symptoms, in particular a sensation of closing of the throat, dysphasia, dry heaving, gagging and significant diarrhea. Given the fact that she is continuously under stress, we have had difficulty controlling her gastrointestinal symptoms with medications, and this has ultimately worsened and impaired her everyday quality of life.

69.    On or about October 24, 2007, while ARAO was attending a QME evaluation for her Workers' Compensation psyche/stress related claim, the trailer was moved to the construction site. Upon returning to work, on the advise of her doctor, ARAO refused to work in the trailer next to the construction site. ARAO was assigned to work in the Business Office.

70.    On or about January 9, 2008, WEST, called ARAO into her office and told ARAO that she had to make a choice to either work in the office trailer next to the construction zone or to work in an office located in an abandoned office area where she would be working alone in isolation. WEST informed ARAO that she could work in the Business Office for 1-2 hours doing filing and then she would have to go to the designated office and sit without work to do as WEST had no projects for ARAO. WEST stopped meeting with ARAO on a daily basis after ARAO refused to work in the office trailer when it was moved to the construction zone area. WEST no longer gave ARAO work assignments/projects to do and seldom spoke to her. ARAO received work to do from the classified workers in the Business Office which consisted mainly of filing. ARAO was still being excluded from Business Office meetings and not afforded the same opportunities as other employees of the College.

71.    On or about January 11, 2008, ARAO, by and through her attorney, protested the directive that she be moved to an office in an abandoned building.

72.    On or about January 31, 2008, ARAO, by and through her attorney, again protested the directive that she be moved to an office in an abandoned building. She included a letter from Dr. Anton, Ph.D., her psychologist. He stated, in relevant parts,

> it is my opinion that the plan for Carol Arao's being limited to working for two hours per day in an office with other employees and to work in isolation for the remainder of the day for the purpose of preventing her from feeling "stress from working around other coworkers" constitutes an unnecessary precaution. ... The prospect of her being separate from her coworkers during most of the workday has exacerbated her sense that she is being marginalized and discriminated against. ... I would add that isolating an individual from his/her fellows is a punitive device that is used in penal institutions and which is known as "solitary confinement."

73.    On or about May 30, 2008, ARAO was confronted with numerous anonymous statements submitted by CABRILLO COMMUNITY COLLEGE to rebut her Cal OSHA Safety Retaliation Complaint. According to the Labor Commissioner, "These statements help explain Cabrillo's decision to segregate [ARAO] from the other employees. Cabrillo withheld them in hopes that the case would settle without exposing these coworkers to potential harassment." ARAO was given 3 weeks to rebut anonymous statements which were never part of her personnel file, yet which were introduced in a proceeding against her.

## IV. FIRST CAUSE OF ACTION

### (Violation of First Amendment Right to Free Speech)

74.    Plaintiff realleges, and incorporates herein as if fully restated, the allegations of paragraphs 1 - 73, ante.

75.    Plaintiff's email of July 18, 2006 touched on a matter of public concern. Plaintiff addressed the right to privacy, the privacy of other employee's personnel files and potential violations of a collective bargaining agreement.

76.    Plaintiff's speech did not interfere with the performance of her duties. Plaintiff acknowledged she performed the requested task.

77.    Plaintiff's speech did not undermine a legitimate goal of her employers.

78.    Plaintiff's speech did not create disharmony among co-workers as it was directly communicated only to her superiors.

79.    Plaintiff's speech did not impair discipline by superiors. Plaintiff was disciplined immediately after sending her email.

80.    Plaintiff's speech did not destroy the relationship of loyalty and trust required of confidential employees. Plaintiff was loyal to CABRILLO COMMUNITY COLLEGE as she sought to ascertain if the requested action would not be in violation of State and Federal Laws, as well as the collective bargaining agreement between the College and Instructors.

81.    Plaintiff suffered injury as a result of her speech that would chill an ordinary person from coming forward to speak. After returning from an industrial illness leave, plaintiff was assigned to work in an isolated unsafe environment. When plaintiff made Defendant's aware of the unsafe environment, she was placed on paid administrative leave for the rest of the academic year. When she was finally allowed to return to work, she was placed in an isolated work site. She was denied readily accessible drinking water for over 6 weeks. The nearest restroom was about 80 yards away and not properly maintained. The portable trailer to which she was assigned was relocated next to a construction/hard-hat zone. Plaintiff was excluded from staff meetings and given little to no work.

82.    The decision to isolate Plaintiff was motivated, at least in part, by Plaintiff's email of July 18, 2006 questioning a directive which she felt might violate the right to privacy, the privacy of other employee's personnel files and potential violations of a collective bargaining agreement.

## V. SECOND CAUSE OF ACTION

(42 U.S.C. § 1981, Race Discrimination)

83.    Plaintiff realleges, and incorporates herein as if fully restated, the allegations of paragraphs 1 - 82, ante.

84.    This action at law for money damages arises under Title 42 U.S.C. § 1981, the Constitution of the United States, the laws and Constitution of the State of California, and common law principles, to redress a deprivation under color of state law of rights, privileges and immunities secured to Plaintiff by said statutes, and by the Fifth and Fourteenth Amendments to the Constitution of the United States.

85.    The acts and omissions of defendants deprived plaintiff of rights secured to her by the Fifth and Fourteenth Amendments to the United States Constitution by: disparate treatment; by subjecting Plaintiff to harassment from co-workers and supervisors; by denial of advancement opportunities; by arbitrarily reducing workload; by arbitrarily altering the terms and conditions of employment without due process; and by submitting evidence against her without due process.

86.    These acts and omissions deprived Plaintiff the full benefit of all laws and proceedings for the security of persons and property as enjoyed by white citizens.

87.    These acts and omissions deprived Plaintiff of the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship between Plaintiff and Defendant CABRILLO COMMUNITY COLLEGE.

88. As a direct and proximate result of the Defendant's acts and omissions, Plaintiff suffered injury, loss and damage as more particularly described above.

89. The acts of the individual defendants were outrageous, and committed knowingly, willfully, fraudulently and maliciously, with the wrongful intent to vex, annoy, harass, and oppress Plaintiff and to cause physical injury, emotional pain and suffering, from an improper and evil motive amounting to malice, and in conscious disregard of plaintiff's rights; and by reason thereof, plaintiff requests that the individual defendants be require to pay damages by was of example and punishment in a sum according to proof.

WHEREFORE, plaintiff prays for judgment as set forth below.

## VI. THIRD CAUSE OF ACTION

(42 U.S.C. § 1983: First Amendment Retaliation)

90. Plaintiff realleges, and incorporates herein as if fully restated, the allegations of paragraphs 1 - 89, ante.

91. The actions of individual defendants set forth above were intended to retaliate against and punish plaintiff for her exercise of her right to petition the government for redress and to express peaceably views contrary to those held by these defendants. Such conduct violated the plaintiff's right of free speech and right to petition the government for redress as guaranteed by the First and Fourteenth Amendments to the United States Constitution and by the laws and Constitution of the State of California.

92. As a direct and proximate result of the Defendant's acts and omissions, Plaintiff suffered injury, loss and damage as more particularly described above.

93. The acts of the individual defendants were outrageous, and committed knowingly, willfully, fraudulently and maliciously, with the wrongful intent to vex, annoy, harass, and oppress Plaintiff and to cause physical injury, emotional pain and suffering, from an improper and evil motive amounting to malice, and in conscious disregard of plaintiff's rights; and by

reason thereof, plaintiff requests that the individual defendants be require to pay damages by was of example and punishment in a sum according to proof.

WHEREFORE, plaintiff prays for judgment as set forth below.

## VII. FOURTH CAUSE OF ACTION

(42 U.S.C. § 1985: Conspiracy to violate Constitutional rights.)

94.    Plaintiff realleges, and incorporates herein as if fully restated, the allegations of paragraphs 1 - 93, ante.

95.    By virtue of the foregoing, certain defendants, and two or more of them, conspired for the purpose of depriving plaintiff of liberty and property and other Constitutional rights without due process of law. Plaintiff is informed and believes and thereon alleges that the defendants, acting in their individual capacities and under color of state law, did and caused to be done an act or acts in furtherance of the object of a conspiracy and acted in concert to undertake a course of conduct violative of plaintiff's constitutional rights by:

    a.    conspiring to engage in disparate treatment of plaintiff;

    b.    conspiring to place plaintiff on an 8-month administrative leave of absence without a hearing;

    c.    conspiring to isolate plaintiff from co-workers;

    d.    conspiring to unilaterally alter plaintiff's terms and conditions of employment; and,

    e.    conspiring to introduce evidence against plaintiff in adjudicative proceedings in violation of plaintiff's contractual and Constitutional due process rights.

96.    As a direct and proximate result of the conspiracy between and among the aforesaid defendants and others, plaintiff was deprived of her rights under the First, Fifth and Fourteenth Amendments to the United States Constitution. As a further direct and proximate

1  result of defendant's acts and omissions, plaintiff suffered injury, loss and damage as more

2  particularly described above.

3      97.    The acts of the individual defendants were outrageous, and committed knowingly,

4  willfully, fraudulently and maliciously, with the wrongful intent to vex, annoy, harass, and

5  oppress Plaintiff and to cause physical injury, emotional pain and suffering, from an improper

6  and evil motive amounting to malice, and in conscious disregard of plaintiff's rights; and by

7  reason thereof, plaintiff requests that the individual defendants be require to pay damages by was

8  of example and punishment in a sum according to proof.

9      WHEREFORE, plaintiff prays for judgment as set forth below.

10              **VIII. FIFTH CAUSE OF ACTION**

11              (29 U.S.C. § 623: Age Discrimination)

12     98.    Plaintiff realleges, and incorporates herein as if fully restated, the allegations of

13  paragraphs 1 - 97, ante.

14     99.    Plaintiff was denied an out-of-class assignment as a Confidential Personnel

15  Technician. The assignment was given to a less qualified employee 17 years younger.

16     100.   Plaintiff's workload was reduced, with many jobs she had been performing given

17  to younger and even hourly employees. Plaintiff was reduced to sitting in an isolated office with

18  no assigned tasks to complete.

19     101.   As a direct and proximate result of the Defendant's acts and omissions, Plaintiff

20  suffered injury, loss and damage as more particularly described above.

21     102.   The acts of the individual defendants were outrageous, and committed knowingly,

22  willfully, fraudulently and maliciously, with the wrongful intent to vex, annoy, harass, and

23  oppress Plaintiff and to cause physical injury, emotional pain and suffering, from an improper

24  and evil motive amounting to malice, and in conscious disregard of plaintiff's rights; and by

25

26

1    reason thereof, plaintiff requests that the individual defendants be require to pay damages by was

2    of example and punishment in a sum according to proof.

3        WHEREFORE, plaintiff prays for judgment as set forth below.

4    ## IX. SIXTH CAUSE OF ACTION

5        (42 U.S.C. § 2000e-2(a): Unlawful Employment Practices.)

6        103.    Plaintiff realleges, and incorporates herein as if fully restated, the allegations of

7    paragraphs 1 - 102, ante.

8        104.    Defendants discriminated against plaintiff with respect to terms, conditions and/or

9    privileges of employment in whole or in part because of race and/or national origin.

10        105.    Defendants limited and segregated plaintiff in a manner which deprived her of

11    employment opportunities and adversely affected her status as an employee because of her race

12    and/or national origin.

13        106.    As a direct and proximate result of the Defendant's acts and omissions, Plaintiff

14    suffered injury, loss and damage as more particularly described above.

15        107.    The acts of the individual defendants were outrageous, and committed knowingly,

16    willfully, fraudulently and maliciously, with the wrongful intent to vex, annoy, harass, and

17    oppress Plaintiff and to cause physical injury, emotional pain and suffering, from an improper

18    and evil motive amounting to malice, and in conscious disregard of plaintiff's rights; and by

19    reason thereof, plaintiff requests that the individual defendants be require to pay damages by was

20    of example and punishment in a sum according to proof.

21        WHEREFORE, plaintiff prays for judgment as set forth below.

22    ## X. SEVENTH CAUSE OF ACTION

23        (42 U.S.C. § 2000e-3 Other Unlawful Employment Practices.)

24        108.    Plaintiff realleges, and incorporates herein as if fully restated, the allegations of

25    paragraphs 1 - 107, ante.

26

109.  Defendants discriminated and retaliated against plaintiff for making charges of discrimination.

110.  Defendants discriminated and retaliated against plaintiff for participating in investigations by the EEOC.

111.  As a direct and proximate result of the Defendant's acts and omissions, Plaintiff suffered injury, loss and damage as more particularly described above.

112.  The acts of the individual defendants were outrageous, and committed knowingly, willfully, fraudulently and maliciously, with the wrongful intent to vex, annoy, harass, and oppress Plaintiff and to cause physical injury, emotional pain and suffering, from an improper and evil motive amounting to malice, and in conscious disregard of plaintiff's rights; and by reason thereof, plaintiff requests that the individual defendants be require to pay damages by was of example and punishment in a sum according to proof.

WHEREFORE, plaintiff prays for judgment as set forth below.

## XI. EIGHTH CAUSE OF ACTION

(42 U.S.C. § 12112: Disability Discrimination.)

113.  Plaintiff realleges, and incorporates herein as if fully restated, the allegations of paragraphs 1 - 112, ante.

114.  Defendants discriminated against plaintiff in regard to advancement, job training, and other terms, conditions, and privileges of her employment.

115.  Plaintiff suffered from both physical and mental impairments which substantially limited one or more major life activities.

116.  Plaintiff had a record of cancer.

117.  Plaintiff had a record of carpal tunnel syndrome.

118.  Plaintiff could still perform the essential functions of the job.

119.    Plaintiff required the accommodation of having readily accessible cold packs for her wrists. The request that she be allowed to bring her own mini-refrigerator to work for that purpose was reasonable.

120.    Plaintiff was denied that request for weeks after being relocated to an isolated trailer in the middle of the summer.

121.    Plaintiff required the accommodation that she not be required to work under the supervision of the individuals who were harassing her.

122.    CABRILLO COMMUNITY COLLEGE is a large enough employer to accommodate the needs of one employee to not be placed under the supervision of those who were harassing her.

123.    Defendant's choice of accommodation, to isolate plaintiff, only served to make plaintiff's condition worse. Defendant was advised of that fact, yet only acquiesced to not isolating plaintiff upon plaintiff's refusal to work in an unhealthy environment.

124.    Defendants restricted plaintiff's opportunities for advancement and job training by isolating her work site and excluding her from staff meetings.

125.    As a direct and proximate result of the Defendant's acts and omissions, Plaintiff suffered injury, loss and damage as more particularly described above.

126.    The acts of the individual defendants were outrageous, and committed knowingly, willfully, fraudulently and maliciously, with the wrongful intent to vex, annoy, harass, and oppress Plaintiff and to cause physical injury, emotional pain and suffering, from an improper and evil motive amounting to malice, and in conscious disregard of plaintiff's rights; and by reason thereof, plaintiff requests that the individual defendants be require to pay damages by was of example and punishment in a sum according to proof.

WHEREFORE, plaintiff prays for judgment as set forth below.

## XII. NINTH CAUSE OF ACTION

(Intentional Infliction of Emotional Distress)

127.    Plaintiff realleges, and incorporates herein as if fully restated, the allegations of paragraphs 1 - 126, ante.

128.    Defendants conduct towards plaintiff was extreme and outrageous in that defendants:

    a.  Directed plaintiff to perform a task which consisted of breaching the confidentiality of one or more other employee's personnel files.

    b.  Ordered plaintiff to work in an unsafe environment in violation of California Labor Code § 6402, after she informed her superiors of the breach of confidentiality of personnel files.

    c.  Ordered plaintiff to work in isolation after she informed her superiors of the breach of confidentiality of personnel files.

    d.  Failed to inspect plaintiff's worksite Trailer for the purpose of determining whether the property complies with or violates any enactment or contains or constitutes a hazard to her health or safety prior to her being assigned to work therein.

    e.  Placed plaintiff on indefinite leave of absence after she informed defendants of hazardous worksite.

    f.  Failed to provide plaintiff with a hearing prior to putting plaintiff on indefinite leave of absence.

    g.  Ordered plaintiff to work in a trailer in the middle of the summer without fresh and pure drinking water in violation of California Labor Code § 2441(a).

    h.  Ordered plaintiff to work in a location 233 feet away from the nearest restroom facility, in violation of California Labor Code § 2260 and Title 8, California Code

of Regulations § 3364 (b), after being notified plaintiff suffered from gastrointestinal dysmotility disorder.

   i.  Failed to properly clean and maintain the restroom facilities nearest to the plaintiff even after repeated requests to do so, in violation of California Labor Code § 2260 and Title 8, California Code of Regulations § 3364 (b).

   j.  Failed to keep restroom facilities accessible at all times to plaintiff, in violation of California Labor Code § 2260 and Title 8, California Code of Regulations § 3364 (b).

   k.  Reduced plaintiff's workload without justification.

   l.  Used anonymous statements and written reports as evidence against plaintiff in proceedings against plaintiff in violation of the provisions of the Confidential Employee Handbook and in violation of Plaintiff's due process rights.

   m.  Continued to order plaintiff to work in solitary after receiving statements from medical professionals that such a working condition was harmful to her well-being.

129.  As a direct and proximate result of the Defendant's acts and omissions, Plaintiff suffered injury, loss and damage as more particularly described above.

130.  The acts of the individual defendants were outrageous, and committed knowingly, willfully, fraudulently and maliciously, with the wrongful intent to vex, annoy, harass, and oppress Plaintiff and to cause physical injury, emotional pain and suffering, from an improper and evil motive amounting to malice, and in conscious disregard of plaintiff's rights; and by reason thereof, plaintiff requests that the individual defendants be require to pay damages by was of example and punishment in a sum according to proof.

WHEREFORE, plaintiff prays for judgment as set forth below.

# XIII. PRAYER FOR RELIEF

Plaintiff seeks judgment as follows:

      a.    Compensatory general and special damages against all defendants, and each of them, in an amount according to proof;

      b.    Punitive and exemplary damages against each of the defendants herein sued in his/her individual capacity;

      c.    Civil penalties and treble damages as allowed by California Civil Code § 52.

      d.    Prejudgment interest according to proof.

      e.    Reasonable attorney's fees and expenses of litigation as allowed by law, including but not limited to 42 U.S.C. § 1988 and California Civil Code § 52.

      f.    Costs of suit reasonably incurred herein;

      g.    Such further relief as the court deems just and proper;

      h.    That CABRILLO COMMUNITY COLLEGE be required to pay any judgment pursuant to law, including but not limited to California Government Code § 825.

DATED: 23 June 2008

CAROL LYNNE ARAO

_Carol Lynne Arao_
Carol Lynne Arao

# XIII. PRAYER FOR RELIEF

Plaintiff seeks judgment as follows:

    a.    Compensatory general and special damages against all defendants, and each of them, in an amount according to proof;

    b.    Punitive and exemplary damages against each of the defendants herein sued in his/her individual capacity;

    c.    Civil penalties and treble damages as allowed by California Civil Code § 52.

    d.    Prejudgment interest according to proof.

    e.    Reasonable attorney's fees and expenses of litigation as allowed by law, including but not limited to 42 U.S.C. § 1988 and California Civil Code § 52.

    f.    Costs of suit reasonably incurred herein;

    g.    Such further relief as the court deems just and proper;

    h.    That CABRILLO COMMUNITY COLLEGE be required to pay any judgment pursuant to law, including but not limited to California Government Code § 825.

DATED: 23 June 2008

CAROL LYNNE ARAO

Carol Lynne Arao

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury for this matter.

DATED: 23 June 2008

CAROL LYNNE ARAO

*Carol Lynne Arao*

Carol Lynne Arao

EEOC Form 161 (2/08)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: **CAROL LYNNE ARAO**
**P. O. BOX 1621**
**Capitola, CA 95010**

From: **San Francisco District Office**
**350 The Embarcadero**
**Suite 500**
**San Francisco, CA 94105**

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
| --- | --- | --- |
| 37A-2007-05140 | **Linda A. Scanlan,** Investigator | **(415) 625-5672** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

| | |
| --- | --- |
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [ ] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the allege discrimination to file your charge |
| [X] | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that th information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance wi the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [ ] | Other (briefly state) |

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the o notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) und federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your rece of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim m be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 yea before you file suit may not be collectible.**

On behalf of the Commission

*Michael Baldonado*

**Michael Baldonado,**
**Acting Director**

3·26·08

(Date Mailed)

Enclosures(s)

cc:     **Loree L. McCawley**
**Director of Human Resources**
**CABRILLO COMMUNITY COLLEGE**
**6500 SOQUEL DRIVE**
**Aptos, CA 95003**

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than <u>2 years (3 years)</u> before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit <u>before 7/1/02</u> – *not* 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

℀ JS 44  (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
CAROL LYNNE ARAO

**DEFENDANTS**
CABRILLO COMMUNITY COLLEGE, PEGI ARD, DEBRA BARNETT, LOREE McCAWLEY, BARBARA SHINGAI, and SHELLEY WEST

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    SANTA CRUZ
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

In PRO SE

Attorneys (If Known)

# C08  03050 PVT

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                     and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Security Act | ☐ 871 IRS—Third Party | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | 26 USC 7609 | ☐ 900Appeal of Fee |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | **IMMIGRATION** | | Determination |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | Under Equal Access |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | to Justice |
| | Other | | Alien Detainee | | ☐ 950 Constitutionality of |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | State Statutes |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. §§ 1981, 1983, 1985, 2000e-2(a), 2000e-3, 12112; 29 U.S.C. § 623

Brief description of cause:
Employment Discrimination/Retaliation based on race, age and physical and mental disability, First Amendment retaliation.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION       DEMAND $              CHECK YES only if demanded in complaint:
UNDER F.R.C.P. 23                                   JURY DEMAND:  ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)       ☐ SAN FRANCISCO/OAKLAND       ☒ SAN JOSE

DATE
23 June 2008

SIGNATURE OF ATTORNEY OF RECORD
Carol Lynne Arao